IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| CHRIS HOGAN,<br><br>Plaintiff,<br><br>vs.<br><br>UTAH TELECOMMUNICATION OPEN INFRASTRUCTURE AGENCY, AKA UTOPIA, AND TODD MARRIOTT, EXECUTIVE DIRECTOR OF UTAH TELECOMMUNICATION OPEN INFRASTRUCTURE AGENCY AND DOES 1-5,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT<br><br>Case No. 1:11-CV-64 TS |

This matter is before the Court on Defendant Utah Telecommunication Open Infrastructure Agency's ("UTOPIA") Motion for Summary Judgment and Plaintiff Chris Hogan's Amended Motion for Partial Summary Judgment. For the reasons set forth below, the Court will deny Defendant's Motion and grant in part and deny in part Plaintiff's Motion.

## I. FACTUAL BACKGROUND

The following facts are uncontroverted. Immaterial facts and factual averments not properly supported by the record are omitted.

On or about May 12, 2009, UTOPIA and Plaintiff entered into an Agreement for Professional Services (the "Agreement") whereby Hogan would provide services as an independent contractor to UTOPIA. The term of the Agreement was for two years. UTOPIA's duties under the Agreement included payment of $11,500 per month to Hogan and reimbursement of expenses, upon receipt of invoices from Hogan. To limit such expenses, UTOPIA leased an apartment in Salt Lake City, Utah, and allowed Hogan use of the apartment when he was in Utah on UTOPIA business.

In the spring of 2011, Hogan complained to Chris Pantier, UTOPIA's outside plant manager and full-time employee, about certain actions of Todd Marriott, UTOPIA's executive director. Pantier communicated Hogan's complaints to Marriott on March 16, 2011. On March 17, 2011, Marriott met with Hogan and confronted him about his conversation with Pantier. A few hours after the meeting, Marriott and UTOPIA general counsel David Shaw offered Hogan a termination agreement, which Hogan declined to sign. Marriott informed Hogan that his "day-to-day interaction with staff would immediately cease," and that Hogan's only contact with UTOPIA would be through Marriott.[1] Hogan asked for twenty-four hours to propose an extension of the Agreement, and Marriott agreed.

---

[1]Docket No. 95, at 6, 12; Docket No. 99, at 11, 25.

On or shortly after March 17, 2011, Marriott ordered that Hogan be locked out of UTOPIA's offices and systems. That order was carried out by March 18, 2011. Marriott denied that the order was related to Hogan's decision not to enter into a termination agreement, instead stating that it "would be customary for somebody with as much information and knowledge as Mr. Hogan had . . . that [UTOPIA] change the locks and passwords and those things that would have been necessary to secure a network such as [UTOPIA's]."[2]

On March 18, 2011, even though it had not heard anything from Hogan, UTOPIA terminated the lease on the apartment that it was allowing Hogan to use while he worked for UTOPIA. On March 21, 2011, UTOPIA hired Gary Jones, at least on a temporary basis, to perform some of the work that Hogan had been performing. The next day, UTOPIA hired Brett Iverson to assist Gary Jones in that work.

On March 21, 2011, Hogan served UTOPIA with a notice of claim that included a draft complaint. The notice of claim also included a claim for breach of contract. After receiving the notice of claim, UTOPIA, through Marriott, mailed Hogan a notice of expiration on March 24, 2011. The notice of expiration reiterated UTOPIA's offer of March 17, 2011, to enter into a termination agreement, but also offered Hogan the option of finishing the term of the Agreement by working on "Web Portal Design and Implementation" and "Organizational Development."[3] The notice of expiration also stated that, if Hogan did not enter into a termination agreement, he "will need to communicate with [Marriott] your plan to satisfactorily complete the unfinished

---

[2]Docket No. 95-6, at 46–47.

[3]Docket No. 85-5, at 3.

Services by May 12, 2011."[4] Finally, the notice of expiration requested the return of a cell phone and laptop, which UTOPIA claimed were company property.

After March 17, 2011, Hogan did not perform services for UTOPIA and did not submit invoices for such services to UTOPIA. Instead, on March 21, 2011, Hogan conditioned further work upon UTOPIA either paying him damages or rehiring him and replacing the executive director. UTOPIA paid all invoices it received from Hogan. If Hogan had continued to work for UTOPIA from March 17, 2011, to May 12, 2011, he would have received $23,000.

In a Memorandum Decision and Order,[5] this Court dismissed all but Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims. The parties have filed cross motions for summary judgment as to these two remaining claims and Plaintiff has moved for summary judgment on his claim for attorney fees.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[7] The

---

[4]*Id.*

[5]Docket No. 41.

[6]Fed. R. Civ. P. 56(a).

[7]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[8]

## III. DISCUSSION

### A. BREACH OF CONTRACT

An action for breach of contract requires proof of four elements: (1) the existence of a valid contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and (4) resulting damages to the plaintiff.[9]

The parties agree that the Agreement is a valid contract and that Plaintiff suffered damages in the amount of $23,000. The disputed elements, therefore, are whether Defendant breached the Agreement, and whether Plaintiff performed his obligations under the Agreement.

#### *1. Breach*

Plaintiff argues that Defendant breached the Agreement by (1) unilaterally terminating the Agreement and (2) failing to pay $11,500 per month during April and May of 2011, as required by the Agreement.

##### *A. Unilateral termination*

The Court finds that Defendant breached the Agreement by unilaterally terminating it. By March 18, 2011, within one day of Plaintiff's refusal to sign the termination agreement and Marriott's promise to give Hogan twenty-four hours to propose an extension of the Agreement,

---

[8]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[9]*Bair v. Axiom Design*, 20 P.3d 388, 392 (Utah 2001) (citing *Nuttall v. Berntson*, 30 P.2d 738, 741 (Utah 1934)).

UTOPIA locked Hogan out of its offices, denied him access to its systems, and terminated the lease on the apartment UTOPIA had rented for Hogan's use while working for UTOPIA. By March 22, 2011, UTOPIA had hired two people to take over at least some of Hogan's responsibilities. On March 24, 2011, UTOPIA demanded the return of the cell phone and laptop UTOPIA had provided Hogan to assist him with his work. In light of these facts, the Court determines that a reasonable jury would be compelled to conclude that Defendant terminated the Agreement.

Defendant argues that Plaintiff waived his argument that UTOPIA breached the Agreement based on the facts recited in the preceding paragraph. According to Defendant, Plaintiff did this by failing to mention these facts in response to Defendant's discovery request that Plaintiff "State all facts in support of the allegation in paragraph 146 of the Complaint that 'Marriott unilaterally terminated the contract between Hogan and UTOPIA.'"[10]

In support of this argument, Defendant cites to the Supreme Court's decision in *Cleveland v. Policy Management Systems Corp*.[11] In *Cleveland*, the Court stated that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity."[12]

---

[10]Docket No. 97, at 8.

[11]526 U.S. 795 (1999).

[12]*Id.* at 806.

Here, unlike in *Cleveland*, Hogan is not contradicting his discovery responses. The theory that UTOPIA breached the Agreement by locking Hogan out of UTOPIA offices and systems is not inconsistent with the alternative theory—which Hogan did state in his discovery responses—that UTOPIA breached the Agreement when it sent Hogan the notice of expiration. Plaintiff has identified several facts supporting his argument, none of which Defendant disputes.[13] Thus, unlike in *Cleveland*, there is no question that this evidence is "sufficient to warrant a reasonable juror's concluding" that Defendant breached the Agreement.[14]

*2. Failure to pay*

Hogan next argues that UTOPIA breached the Agreement by failing to pay Hogan $11,500 per month during April and May of 2011. Defendant responds that, because Plaintiff neither worked during those months nor submitted corresponding invoices, it was not obliged to pay him. To this, Plaintiff retorts that Defendant's prior breach excused his performance of these requirements.

Generally speaking, to prevail on a breach of contract claim, a plaintiff must tender his or her own performance.[15] To qualify, the tender "must be complete and unconditional,"[16] and it must not "impose on the other party a new condition or requirement not already imposed by the

---

[13]The Court also notes that the facts supporting this theory of breach were disclosed in Plaintiff's Amended Complaint. Thus, Defendant cannot be heard to argue that it is unfairly surprised or prejudiced by this theory.

[14]*Id.* at 807.

[15]*Kelley v. Leucadia Fin. Corp.*, 846 P.2d 1238, 1243 (Utah 1992).

[16]*Century 21 All W. Real Estate & Inv. v. Webb*, 645 P.2d 52, 56 (Utah 1982).

contract."[17] But, "[o]ne party cannot by willful act or omission make it impossible or difficult for the other to perform and then invoke the other's nonperformance as a defense."[18] In such cases, the nonbreaching party's performance is excused.[19]

In this case, Hogan failed both to perform the work and submit the invoices required by the Agreement during the months of April and May of 2011. That, however, is not the end of the matter. Plaintiff has submitted uncontested evidence showing that Defendant, at the very least, made it difficult for Plaintiff to perform his obligations under the Agreement. Such evidence includes the fact that UTOPIA locked Hogan out of its offices and systems, terminated the lease on the apartment it had provided for Hogan's use while working for UTOPIA, requested the return of the cell phone and laptop it provided Hogan, and hired two people to perform at least some of Hogan's job responsibilities. The Court finds that a reasonable jury could not conclude that these actions did not make it more difficult for Hogan to perform his responsibilities under the contract. Accordingly, the contractual requirements that Hogan perform the work and submit the invoices required by the Agreement are excused.

Defendant vigorously argues that it did not impair Hogan's ability to perform under the Agreement. According to UTOPIA, it was willing to allow Plaintiff to work the remainder of his contractual term with minimum responsibilities that "may have been as simple as communicating

---

[17]*Kelley*, 846 P.2d at 1243.

[18]*Cahoon v. Cahoon*, 641 P.2d 140, 144 (Utah 1982).

[19]*See Nielsen v. Chin-Hsien Wang*, 613 P.2d 512, 514 (Utah 1980).

with UTOPIA's Executive Director on a daily basis."[20] This easy assignment would not necessarily have required access to UTOPIA's systems or offices. Further, although UTOPIA had recently kicked Hogan out of the apartment UTOPIA had provided him, UTOPIA asserts that Hogan was free to rent another at UTOPIA's expense.

The Court is not persuaded by this line of reasoning. As discussed above, UTOPIA unilaterally terminated the Agreement when it locked Hogan out of UTOPIA's offices, systems, and apartment. There can be no doubt that it was difficult or impossible for Hogan to perform under the Agreement in such a circumstance. UTOPIA recognized this difficulty when it hired individuals to perform in Hogan's place. UTOPIA's belated offer to allow Hogan to complete his contractual term with UTOPIA by performing simple tasks does not cure its earlier breach.

*2. Performance*

UTOPIA argues that Hogan's breach of contract claim fails because he did not perform his obligations under the Agreement. As discussed above, however, UTOPIA's prior breach excused Plaintiff's obligations. The Court therefore finds that this factor is satisfied.

As the parties do not dispute the existence of a contract or that Plaintiff incurred $23,000 in damages, and the Court has determined that Defendant breached and Plaintiff's performance was excused, the Court will grant summary judgment in favor of Plaintiff and against Defendant on Plaintiff's claim for breach of contract.

---

[20]Docket No. 97, at 15.

B. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Hogan next argues that UTOPIA breached the covenant of good faith and fair dealing when it locked Hogan out of UTOPIA's systems and offices, terminated the lease on the apartment he was using, requested the return of the laptop and cell phone UTOPIA had provided, and hired others to perform at least some of his responsibilities.

The covenant of good faith and fair dealing inheres in every contract.[21] The covenant includes "an implied duty that contracting parties 'refrain from actions that will intentionally 'destroy or injure the other party's right to receive the fruits of the contract.'"[22]

In a previous order, this Court stated that "to the extent Defendant[] took actions that would prevent Plaintiff from performing his obligations under the Agreement, such is sufficient to maintain an action for breach of the covenant of good faith and fair dealing."[23] As discussed above, the Court has determined that a reasonable jury would be compelled to conclude that Defendant took such actions when it removed Plaintiff's access to UTOPIA's resources. The Court will therefore grant summary judgment in favor of Plaintiff on this claim.

C. ATTORNEY FEES

Plaintiff has moved for summary judgment on his claim that he is entitled to his attorney fees incurred in litigating this action. "In general, Utah follows the traditional American rule that attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes

---

[21] *Young Living Essential Oils, LC v. Marin*, 266 P.3d 814, 819 (Utah 2011).

[22] *Id.* at 816 (quoting *Oakwood Vill. LLC v. Albertsons, Inc.*, 104 P.3d 1226, 1239 (Utah 2004)).

[23] Docket No. 41, at 18.

such an award."[24] Here, Hogan does not identify any statute entitling him to fees, and the Agreement does not contain such a provision. Plaintiff instead relies on an exception to the American rule stated in *Heslop v. Bank of Utah*.[25]

In *Heslop*, the Utah Supreme Court allowed a former Bank of Utah employee who had been wrongfully terminated to recover attorney fees despite the absence of a contractual or statutory provision to that effect.[26]

Unlike the plaintiff in *Heslop*, Hogan is not an employee whose claims derive from an employment contract. As has been explained previously, Hogan was an independent contractor. Nevertheless, Plaintiff argues that *Heslop* should be expanded to allow an independent contractor to recover attorney fees as consequential damages. To the Court's knowledge, no Utah court has addressed this precise issue.

At the outset, the Court notes that because no Utah court has recognized an independent contractor exception to the American rule for attorney fees, the Court is hesitant to recognize

---

[24] *Hughes v. Cafferty*, 89 P.3d 148, 152 (Utah 2004) (quoting *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994)).

[25] 839 P.2d 828 (Utah 1992).

[26] *Id.* at 841.

such an exception.[27] Furthermore, it appears that Utah courts are reticent to find that *Heslop* applies outside the context of an employment contract.[28]

Nevertheless, the Court is persuaded that, if a Utah court were to address this argument, it would determine that the employment contract exception to the American rule articulated in *Heslop* should not be extended to independent contractors. In *Heslop*, the court noted that it had previously recognized an exception to the American rule allowing a party to recover attorney fees as consequential damages in first-party insurance claims. According to the court, "[t]he rationale for allowing attorney fees as recoverable damages within the contemplation of the parties in first-party insurance claims is also applicable to employment claims. Terminated employees, like injured insurance claimants, find themselves in a particularly vulnerable position once the employer breaches the employment agreement."[29]

Independent contractors, however, generally do not find themselves in the same vulnerable circumstances an employee does upon an employer's breach of an employment contract. Indeed, this is one reason that employees and independent contractors are not afforded the same rights of recovery under the law. As the rationale for allowing attorney fees in the context of first-party insurance and employment claims does not apply to an independent

---

[27] *See Aclys Int'l v. Equifax*, 438 F. App'x 689, 693 (10th Cir. 2011) (unpublished) (holding that "as a federal court, we are generally reticent to expand state law without clear guidance from its highest court" (internal quotation marks and citation omitted)).

[28] *See Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1162 (Utah 2003) ("[W]e decline to create an additional exception to accommodate the facts presented in the record before us.").

[29] *Heslop*, 839 P.2d at 840.

contractor's claim for breach of contract, the Court finds that a Utah court would not except independent contractors from the American rule for attorney fees. The Court will therefore deny Plaintiff's Motion as it relates to attorney fees.

It is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 88) is DENIED. It is further

ORDERED that Plaintiff's Amended Motion for Partial Summary Judgment (Docket No. 95) is GRANTED IN PART AND DENIED IN PART.

The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against Defendant in the amount of $23,000 on Plaintiff's claims for breach of contract and breach of the covenant of good faith and fair dealing and close this case forthwith.

DATED April 15, 2013.

BY THE COURT:

TED STEWART
United States District Judge