IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHRIS HOGAN,<br><br>      Plaintiff,<br><br>v.<br><br>UTAH TELECOMMUNICATIONS OPEN INFRASTRUCTURE AGENCY,<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S AMENDED MOTION TO DISMISS AND DENYING AS MOOT PLAINTIFF'S MOTION FOR JUDGMENT<br><br><br>Case No. 1:11-CV-64 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Utah Telecommunications Open Infrastructure Agency's ("UTOPIA") Amended Motion to Dismiss and Plaintiff Chris Hogan's Motion for Judgment under Rule 54(d). For the reasons discussed more fully below, the Court will grant Defendant's Motion and deny Plaintiff's Motion as moot.

## I. INTRODUCTION

Plaintiff seeks damages from his former employer, UTOPIA, a state agency that works to develop telecommunications infrastructure. Plaintiff's dispute began when Plaintiff suspected his boss had a potential conflict with a company that submitted a bid for a contract with UTOPIA. Plaintiff brought the potential conflict of interest to the attention of the individual in charge of the bidding process. When Plaintiff's boss learned of Plaintiff's action, he allegedly forced Plaintiff out of UTOPIA.

Plaintiff's original complaint alleged First Amendment and other state-law claims. The Court dismissed all the claims but one, granting summary judgment to Plaintiff for breach of

contract and breach of covenant of good faith. Plaintiff and Defendant cross-appealed and the Tenth Circuit affirmed on all but one claim—wrongful discharge in violation of public policy.

In Defendant's Amended Motion to Dismiss, Defendant claims that UTOPIA, as a governmental entity, enjoys sovereign immunity from tort claims under the Governmental Immunity Act of Utah ("GIAU") and that it has not waived immunity to the type of claim Plaintiff asserts. Defendant also argues that, assuming UTOPIA is not immune, Plaintiff fails to make out a prima facie case of wrongful discharge. In response, Plaintiff first argues that Plaintiff's boss, Todd Marriott ("Mr. Marriott"), should still be party to the case as a named defendant. Second, Plaintiff argues that applying the GIAU to UTOPIA would violate the Utah Constitution's open-courts provision. Lastly, Plaintiff argues that he has sufficiently pleaded a prima facie case for wrongful discharge in violation of public policy.

Whether the GIAU is constitutional and applies determines whether Plaintiff has stated a claim for which relief may be granted and whether Mr. Marriott ought to still be a party. As such, the Court first discusses the constitutionality of the GIAU and whether the GIAU applies before discussing whether Plaintiff has stated a claim and whether Mr. Marriott should remain a party.

## II.  DISCUSSION

### A.   CONSTITUTIONALITY OF THE GIAU

Plaintiff argues that granting UTOPIA immunity under the GIAU would violate the open-courts provision of the Utah Constitution. Article 1, Section 11 of the Utah Constitution provides, "All courts shall be open, and every person, for an injury done to him . . . shall have remedy by due course of law . . . and no person shall be barred from prosecuting or

defending . . . any civil cause to which he is a party."[1]

The GIAU does not waive governmental immunity for the tort of wrongful termination in violation of public policy.[2] Therefore, if the GIAU applies, UTOPIA would be immune from Mr. Hogan's wrongful-termination claim.

To determine whether a statute that abrogates a legal remedy violates the open-courts provision, the Utah Supreme Court first determines whether the statute abrogates a cause of action existing at the time the statute is enacted.[3] "The legislature thus remains free to abrogate or limit claims that could not have been brought under then-existing law. Claims barred by the doctrine of governmental immunity are an example of this principle."[4] If the statute does result in an abrogation of an existing remedy, the abrogation must be reasonable to comply with the open-courts provision.[5]

It is undisputed that the GIAU abrogates Plaintiff's claim of wrongful termination in violation of public policy. The issue then is whether the abrogation is reasonable.

In *Berry v. Beech Aircraft Corp.*,[6] the Utah Supreme Court used a two-part analysis to determine whether the abrogation of a claim is reasonable and satisfies the open-courts

---

[1] Utah Const. art. 1, § 11.

[2] *See Mecham v. Utah State Dep't of Corr.*, No. 2:09-CV-149-CW 2011 WL 839862, at *2 (D. Utah Mar. 9, 2011) (citing *Broadbent v. Bd. of Educ. of Cache Cnty. Sch. Dist.*, 910 P.2d 1274, 1277 (Utah Ct. App. 1996)); *see also Sanders v. Utah*, 16 F. App'x 952, 955 (10th Cir. 2001).

[3] *Tindley v. Salt Lake City Sch. Dist.*, 116 P.3d 295, 300 (Utah 2005).

[4] *Id.*

[5] *Id.*

[6] 717 P.2d 670 (Utah 1985).

provision.[7] First, the provision is satisfied if the law provides an injured person an effective and reasonable remedy where the benefit provided by the substitute remedy is substantially equal in value to the remedy abrogated in providing a substantive remedy.[8] Second, if there is no substitute remedy provided, abrogation of the remedy "may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective."[9]

Plaintiff argues that there is no alternative remedy for a wrongful-termination claim against UTOPIA.[10] To support this assertion, Plaintiff cites the GIAU provision that states that the only remedies available against a governmental entity are those made available in the GIAU.[11] Defendant argues that Plaintiff does have an alternative remedy for wrongful termination in violation of public policy because the GIAU waives governmental immunity for breach of contract claims.[12] Defendant also argues that Plaintiff's breach of contract and breach of the covenant of good faith and fair dealing claims, on which the Court granted summary judgment for Plaintiff, are effective and reasonable substitute remedies.[13]

---

[7] *Id.* at 680.

[8] *Id.*

[9] *Id.*

[10] Docket No. 128, at 8.

[11] *Id.*

[12] *Id.*; Utah Code Ann. § 63G-7-301(1)(a).

[13] Docket No. 130, at 2.

4

At the hearing, Plaintiff argued that because the value of the tort claim may exceed the value of the contract damages the Court awarded, the contract claim is not an effective and reasonable alternative remedy. Plaintiff relied on *Laney v. Fairview City*,[14] for the proposition that if the value of the remedies is not equal then the two remedies cannot be considered substitutes. In *Laney*, however, the Utah Supreme Court held that the alternative remedy "'must be substantially equal in value or other benefit to the remedy abrogated in providing essentially *comparable substantive protection* . . . although the form of the substitute remedy *may be different*.'"[15]

In this case, although Plaintiff has obtained a different remedy, he has already obtained a substitute remedy that protects the same rights that his tort claim is designed to protect. Since the GIAU provides a reasonable alternative remedy to the harms alleged, of which Plaintiff already took advantage, the Court finds that the GIAU's abrogation of Plaintiff's claim for wrongful termination in violation of public policy is reasonable.

Therefore, because Plaintiff has a reasonable substitute remedy, the Court finds that application of the GIAU does not violate the open-courts provision of the Utah Constitution.

B.  DEFENDANT'S MOTION TO DISMISS

Defendant's Amended Motion to Dismiss seeks the dismissal of Plaintiff's wrongful-discharge claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

---

[14] 57 P.3d 1007 (Utah 2002).

[15] *Id.* (quoting *Berry*, 717 P.2d at 680) (emphasis added).

Defendant argues that because the GIAU provides UTOPIA with immunity against Plaintiff's claim, the Court lacks subject matter jurisdiction under 12(b)(1).[16] "'A motion to dismiss based on immunity is treated as a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.'"[17] Defendant argues that because UTOPIA is a governmental entity and the GIAU "governs all claims against governmental entities or against their employees . . . arising out of the performance of the employee's duties," UTOPIA is immune from Plaintiff's tort claim.[18] Plaintiff does not dispute that the GIAU grants UTOPIA immunity as this is the basis of Plaintiff's argument that applying the GIAU to UTOPIA would be unconstitutional.

Therefore, the Court finds that UTOPIA is immune from Plaintiff's claim under the GIAU and will grant Defendant's Amended Motion to Dismiss based on Rule 12(b)(1) for lack of subject matter jurisdiction.

Even if the Court had jurisdiction over the matter, whether it be because the GIAU is unconstitutional or UTOPIA is not a governmental entity protected by the GIAU, the Court would grant Defendant's Motion to Dismiss under Rule 12(b)(6).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as

---

[16] Docket No. 125, at 4.

[17] *Whipple v. Utah*, No. 2:10-CV-811-DAK, 2011 WL 4368568, at *18 (D. Utah Aug. 25, 2011) (quoting *Meyers v. Colo. Dep't of Human Servs.*, 62 F. App'x 831, 832 (10th Cir. 2003)).

[18] Docket No. 125, at 5.

the nonmoving party.[19]  Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[20] which requires "more than an unadorned, the-defendant-unlawfully harmed-me accusation."[21]  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[22]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[23]  As the Court in *Iqbal* stated,

> [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[24]

In this case, Plaintiff must plead sufficient facts to make out a plausible claim for relief for wrongful termination in violation of public policy.  To make a prima facie case for such a claim,

---

[19] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[20] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[22] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[23] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[24] *Iqbal*, 556 U.S. at 679 (citations and internal quotation marks omitted).

an employee must show (i) that his employer terminated him; (ii) that a clear and substantial public policy existed; (iii) that the employee's conduct brought the public policy into play; and (iv) that the discharge and the conduct bringing the policy into play are causally connected.[25]

At issue is whether a clear and substantial public policy existed. The Utah Supreme Court has recognized four categories that invoke a clear and substantial public policy: "(1) discharging an employee for 'refusing to commit an illegal or wrongful act'; (2) discharging an employee for 'performing a public obligation'; (3) discharging an employee for 'exercising a legal right or privilege'; and (4) discharging an employee for reporting an employer's criminal activities to the appropriate authorities."[26]

Defendant argues that the only possible public policy that Plaintiff could invoke would be discharging an employee for reporting an employer's criminal activities to the appropriate authorities.[27] Plaintiff, Defendant argues, did not report criminal activity to appropriate authorities, but only communicated suspicions about a potential conflict with a colleague.[28]

Again, Plaintiff does not contest Defendant's argument, but argues that the previously mentioned four categories of public policy are non-exhaustive.[29] Plaintiff argues that "an employer cannot terminate an employee for the reason that the employee insists that the

---

[25] *Touchard v. La-Z-Boy Inc.*, 148 P.3d 945 (Utah 2006) (quoting *Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 396, 404 (Utah 1998)).

[26] *Id.* at 948–49 (quoting *Ryan*, 972 P.2d at 408).

[27] Docket No. 125, at 7.

[28] Docket No. 130, at 4.

[29] Docket No. 128, at 11–12.

employer adhere to the law promulgated to protect the public interest."[30]  Plaintiff relies on *Heslop v. Bank of Utah*[31] for the proposition that an employer cannot terminate an employee for internally reporting a violation of law or policy.

In *Touchard v. La-Z-Boy Inc.*, the Utah Supreme Court interpreted its holding in *Heslop* saying,

> Although *Heslop* suggests that any internal reporting will support a wrongful discharge claim, we emphasize that only internal reporting that furthers a clear and substantial public policy will satisfy the third element of a wrongful discharge claim.  We now endorse this conclusion anew and hold that internal reporting can give rise to a wrongful discharge cause of action where it furthers a clear and substantial public policy.[32]

Therefore, if Plaintiff could demonstrate that his internal reporting furthers a clear and substantial public policy, he could have a valid claim for wrongful termination.  In *Touchard*, the court noted that "reporting furthered a substantial public policy because [the employee] 'pursued all internal methods for resolving the problem.'  This court did not require him to go 'outside the Bank to try to correct the policy violation.'"[33]

In this case, Plaintiff points to the Utah Procurement Code generally, which purports to ensure that potential contractors are dealt with fairly, as a clear and substantial public policy.[34]  Plaintiff, however, does not allege that UTOPIA violated a provision of the code.  Without alleging such facts, the Court cannot find that Plaintiff sufficiently states a claim.  Additionally,

---

[30] *Id.* at 12.

[31] 839 P.2d 828 (Utah 1992).

[32] *Touchard*, 148 P.3d at 958 (quoting *Ryan*, 972 P.2d at 408 n.7).

[33] *Id.* at 957 (quoting *Heslop*, 839 P.2d at 838).

[34] Docket No. 128, at 14.

9

Plaintiff did not plead sufficient facts to demonstrate that he exhausted the internal methods of resolving his suspicion. In Plaintiff's Amended Complaint, he states that he made comments to his colleague overseeing the bidding process that he had a "suspicion that Marriott and [the bidding] company were engaging in anticompetitive practices but acknowledged that he could be wrong."[35] Plaintiff did not pursue the matter beyond that, but rather asked his colleague in charge of the bidding process to inform the UTOPIA board of the potential conflict.[36] Because Plaintiff does not allege sufficient facts to demonstrate that he exhausted the internal reporting mechanisms, the Court finds that he did not allege sufficient facts to implicate a clear and substantial public policy.

As an alternative, Plaintiff argues that terminating Plaintiff satisfied the public obligation category articulated in *Touchard*.[37] As an example of the type of public obligation that would satisfy the clear and substantial public policy element of a wrongful-termination claim, the Utah Supreme Court cites to jury duty.[38] There is nothing in Plaintiff's Amended Complaint that suggests that his actions were to fulfill a public obligation like jury duty.

Based on the alleged facts, the Court finds that Plaintiff failed to state a claim for wrongful termination in violation of public policy.

---

[35] Docket No. 24, at 9.

[36] *Id.*

[37] Docket No. 128, at 15.

[38] *Hansen v. America Online, Inc.*, 96 P.3d 950, at 952 (Utah 2004) (quoting *Ryan*, 972 P.2d at 408).

10

Therefore, if Plaintiff's claim does not fail under Rule 12(b)(1), it fails under Rule 12(b)(6).

C.   MR. MARRIOTT AS A PARTY

Plaintiff's Amended Complaint alleges that he was wrongfully discharged in violation of public policy when UTOPIA, through Mr. Marriott, terminated its contract with Plaintiff because Plaintiff raised questions about a potential conflict of interest between UTOPIA and Mr. Marriott.

Plaintiff argues that Mr. Marriott should still be a party because the Tenth Circuit reversed the Court's dismissal of the wrongful termination claim. Defendant argues Plaintiff's claim for wrongful termination is against his employer, UTOPIA, not Mr. Marriott.[39] Defendant argues that the only claim that Plaintiff could assert against Mr. Marriott has been dismissed by the Court and that dismissal was affirmed by the Tenth Circuit.[40] Additionally, Defendant argues that under the GIAU, Plaintiff may not bring a claim against a government employee based on the same subject matter as the claim against the government unless the employee acted or failed to act through fraud or willful misconduct.[41]

The language of the GIAU is clear on this issue:

> A plaintiff may not bring or pursue any civil action or proceeding based upon the same subject matter against the employee or the estate of the employee whose act or omission gave rise to the claim, unless . . . the employee acted or failed to act through fraud or willful misconduct . . . .[42]

---

[39] Docket No. 128, at 5–6.

[40] *Id.*

[41] Utah Code Ann. § 63G-7-202(3)(c).

[42] *Id.*

In this case, Plaintiff has not alleged fraud or willful misconduct that would allow Plaintiff to pursue simultaneous claims against UTOPIA and Mr. Marriott. Applying the GIAU, the Court will dismiss the claims against Mr. Marriott.

D. PLAINTIFF'S RULE 54(B) MOTION

Given that the Court will grant Defendant's Motion to Dismiss and all claims have now been resolved, the Court will deny Plaintiff's Rule 54(b) Motion as moot.

### III. CONCLUSION

It is therefore

ORDERED that Defendant's Amended Motion to Dismiss (Docket No. 125) is GRANTED. It is also

ORDERED that Plaintiff's Motion for Judgment under Rule 54 (Docket No. 129) is DENIED as moot.

The clerk of the Court is directed to close this case forthwith.

DATED this 23rd day of October, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge